UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 09-cv-61840 O'Sullivan
**[CONSENT]**

FEDERAL TRADE COMMISSION,

      Plaintiff,

    v.

1st GUARANTY MORTGAGE CORP., *et al.,*

      Defendants.

**DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AGAINST DEFAULT DEFENDANTS 1ST GUARANTY MORTGAGE CORP., SPECTRUM TITLE, INC., CROSSLAND CREDIT CONSULTING CORP., AND SCORELEAPER, LLC**

This matter comes before the Court on Plaintiff's Motion for Default Judgment against Defendants 1st Guaranty Mortgage Corp. ("1st Guaranty"), Spectrum Title, Inc. ("Spectrum"), Crossland Credit Consulting Corp. ("Crossland"), and Scoreleaper, LLC ("Scoreleaper") (collectively, "Default Defendants"). On November 17, 2009, Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), commenced this action by filing a Complaint pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; Section 410(b) of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679h(b); and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108. The Complaint alleges that Defendants 1st Guaranty, Spectrum, Crossland, Scoreleaper, Stephen Lalonde, Amy Lalonde, and Michael Petroski engaged in unfair or deceptive acts or practices in connection with the sale and offering for sale of mortgages, credit repair services, and loan modification services, in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the CROA, 15 U.S.C. §§ 1679-1679j, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

Default Defendants 1st Guaranty, Spectrum, Crossland, and Scoreleaper have failed to plead or otherwise defend. They are not represented by counsel, and are corporate entities that may not proceed *pro se*. The Clerk of the Court has entered their default. Clerk's Default (DE# 56, 2/4/10) Entry of a default judgment pursuant to 55(b)(2) is therefore appropriate. Accordingly, the Court grants Plaintiff's motion for a default judgment and permanent injunction, and enters this Default Judgment and Order for Permanent Injunction against Default Defendants 1st Guaranty, Spectrum, Crossland, and Scoreleaper.

It is therefore **ORDERED, ADJUDGED, AND DECREED:**

### FINDINGS

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345; and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

2.      The Complaint states a claim upon which relief may be granted against Default Defendants under Sections 5(a), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b; Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b); and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b).

3.      The activities of Default Defendants charged in the Complaint are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.      Default Defendants transacted business in this district and throughout the United States.

5.      On November 17, 2009, the Court issued a summons, which the Plaintiff served on Default Defendants, with a copy of the Complaint, on November 19, 2009.

6.      Default Defendants failed to appear, answer, or otherwise plead.  Pursuant to Fed. R.Civ. P. 55(a), the Clerk of the Court properly entered their default.

7.      Because of Default Defendants' default, the allegations in the Complaint filed in this action shall be taken as true.  Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975))[1]. "The entry of default ... in no way obviates the need for the determination of the amount and character of damages."  See Virgin Records America, Inc. v. Lacey, 510 F. Supp. 2d 588 (S.D. Ala. 2007)  Because there is ample evidence in the record[2] to ascertain the amount of damages, the Court did not conduct an evidentiary hearing to determine the amount of damages. See, Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538 (11th Cir. 1985) (explaining that damages may be awarded only if the record sufficiently reflects the basis for the award in a hearing or by detailed affidavits that establish the requisite facts).  See, S.E.C. v. First Financial Group of Texas, Inc., 659 F.2d 660 (5th Cir. 1981) (finding that a court is not required to hold a hearing to determine damages on a motion for default judgment if the essential evidence is in the record).

---

[1]The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

[2]The FTC submitted the declaration of Ronald Lewis (DE# 113-7, 8/26/10), a Supervisory Investigator for the FTC. Mr. Lewis attested to the amount of damages of the default defendants based on their respective corporate financial statements that were submitted pursuant to the Court's order.  Second Supplemental Declaration of Ronald D. Lewis pursuant to 28 U.S.C. § 1746 at  pp. 11-14.  (DE# 113-7, 8/26/10)

8.      In connection with the allegations of Counts 1-4, and 6 of Plaintiff's Complaint, Default Defendants 1st Guaranty, Crossland, and Scoreleaper made untrue or misleading representations in violation of the CROA; charged or received money or other valuable consideration for the performance of credit repair services before such services were fully performed in violation of the CROA; requested or received an advance payment for a loan or other extension of credit, which they guaranteed or represented they could obtain with a high likelihood of success, in violation of the TSR; and made false and misleading, material representations to consumers in violation of the FTC Act.  In connection with the allegations of Count 5 of Plaintiff's Complaint, Default Defendants 1st Guaranty and Spectrum made false and misleading, material representations to consumers, in violation of the FTC Act.

9.      Default Defendants formulated, directed, controlled, had the authority to control, or participated in the deceptive practices alleged in Counts 1-6 of the Complaint.

10.     Consumers have suffered substantial injury as a result of Default Defendants' violations of the FTC Act, the CROA, and the TSR.  In addition, Default Defendants have been unjustly enriched as a result of their unlawful acts or practices.   Pursuant to Section V of the Stipulated Preliminary Injunctions which required financial reports and accounting, the Default Defendants submitted completed financial statements that were to fully disclose the defendants' finances and those of all corporations, partnerships, trusts or other entities that each defendant owns, controls, or is associated with.  (DE# 34, 12/2/09)

11.     The equities weigh in favor of entering this Order, and entry of this Order is in the public interest.

12.     This Order is remedial in nature and shall not be construed as the payment of a fine, penalty, punitive assessment, or forfeiture.

## ORDER

### Definitions

1.      The terms "**and**" and "**or**" have both conjunctive and disjunctive meanings.

2.      "**Assisting others**" includes, but is not limited to, providing any of the following goods or services to another person:  (A) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (B) formulating or providing, or arranging for the formulation or provision of, any telephone sales script or any other marketing material, including, but not limited to, the text of any Internet website, email, or other electronic communication; (C) providing names of, or assisting in the generation of, potential customers; (D) performing marketing services of any kind; or (E) acting or serving as an owner, officer, director, manager, or principal of any entity.

3.      "**Credit**" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

4.      "**Credit repair service**" means any service, in return for payment of money or other consideration, for the express or implied purpose of: (A) improving any consumer's credit record, credit history, or credit rating; or (B) providing advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating.

5.      "**Credit-related product, program, or service**" means any product, program, or service which is advertised, offered for sale, or sold to consumers as a method by which

5

consumers may establish or obtain any extension of credit or credit device, including, but not limited to, credit cards, loans, or financing, or as a method to consolidate or liquidate debts.

6.      "**Default Defendants**" means 1st Guaranty Mortgage Corp., Spectrum Title, Inc., Crossland Credit Consulting Corp., and Scoreleaper, LLC; and their successors and assigns.

7.      "**Document**" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

8.      "**Mortgage loan modification or foreclosure relief service**" means any good, service, plan, or program that is represented, expressly or by implication, to assist a consumer in any manner to (A) stop, prevent, or postpone any home mortgage or deed of trust foreclosure sale; (B) obtain or arrange a modification of any term of a home loan, deed of trust, or mortgage; (C) obtain any forbearance from any mortgage loan holder or servicer; (D) exercise any right of reinstatement of any mortgage loan; (E) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the owner of property sold at foreclosure may cure his or her default or reinstate his or her obligation; (F) obtain any waiver of an acceleration clause contained in any promissory note or contract secured by a deed of trust or mortgage on a residence in foreclosure or contained in that deed of trust; (G) obtain a loan or advance of funds that is connected to the consumer's home ownership; (H) avoid or ameliorate the impairment of the consumer's credit record, credit history, or credit rating that is connected to the consumer's

6

home ownership; (I) save the consumer's residence from foreclosure; (J) assist the consumer in obtaining proceeds from the foreclosure sale of the consumer's residence; (K) obtain or arrange a pre-foreclosure sale, short sale, or deed-in-lieu of foreclosure; (L) obtain or arrange a refinancing, recapitalization, or reinstatement of a home loan, deed of trust, or mortgage; (M) audit or examine a consumer's mortgage or home loan application; or (N) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the renter of property sold at foreclosure may continue to occupy the property.  The foregoing shall include any manner of claimed assistance, including, but not limited to, debt, credit, budget, or financial counseling; receiving money for the purpose of distributing it to creditors; contacting creditors or servicers on behalf of the consumer; and giving advice of any kind with respect to filing for bankruptcy.

     9.     "**Servicer**" means any beneficiary, mortgagee, trustee, loan servicer, loan holder, or other entity that performs loan or credit account administration or processing services, and/or their authorized agents.

     10.     "**Telemarketing**" means a plan, program or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services by means of the use of one or more telephones.

**I.**

**PERMANENT BAN REGARDING
MORTGAGE AND CREDIT RELATED PRODUCTS AND SERVICES**

     **IT IS THEREFORE ORDERED** that Default Defendants are permanently restrained and enjoined from participating in any manner or capacity whatsoever, directly or indirectly, in concert with others, individually, or through any business entity or other device, in:

7

A.    the advertising, marketing, promoting, offering for sale, or selling any mortgage;

credit repair service; credit-related product, program, or service; or mortgage loan

modification or foreclosure relief service; and

B.    assisting others engaged in the advertising, marketing, promoting, offering for

sale, or selling any mortgage; credit repair service; credit-related product,

program, or service; or mortgage loan modification or foreclosure relief service.

## II.

## PERMANENT BAN ON TELEMARKETING

**IT IS FURTHER ORDERED** that Default Defendants are permanently restrained and

enjoined from engaging or participating in telemarketing, directly or through any intermediary,

including, but not limited to, by consulting, brokering, planning, investing, outsourcing, or

advertising.

## III.

## INJUNCTION AGAINST MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Default Defendants and their agents, servants,

employees, and those persons in active concert or participation with any of them who receive

actual notice of this Order by personal service or otherwise, in connection with the advertising,

marketing, promoting, offering for sale, or selling of any goods or services, are hereby

permanently restrained and enjoined from making or assisting others in making, expressly or by

implication, any misrepresentation, including, but not limited to, misrepresenting:

A.    The benefit of any good or service;

B.    The cost of any good or service;

C.    Past success in providing goods or services;

D.    The amount of time it will take or is likely to take to obtain goods or services;

E.    Any aspect of the terms of a refund policy or service contract; or

F.    Any other material fact.

## IV.

## MONETARY JUDGMENTS AND REDRESS

**IT IS FURTHER ORDERED** that:

A.    Judgment is entered in the amount of One Million Seven Hundred Seventy-Three Thousand Seven Hundred Twenty-One dollars ($1,773,721.00) against Default Defendants 1st Guaranty and Spectrum, as equitable monetary relief in favor of the Commission, jointly and severally with any monetary judgment that was entered against Defendant Stephen Lalonde and that may be entered against Defendant Amy Lalonde.  Any amounts paid pursuant to the Criminal Monetary Penalties provisions of the Judgment in a Criminal Case in *U.S. v. Stephen Lalonde*, No. 0:09CR60181-COHN-1 (S.D. Fla., Dec. 23, 2009), shall be credited to this judgment amount;

B.    Judgment is entered in the amount of Two Hundred Fifty-Four Thousand Eight Hundred Eighty-One dollars ($254,881.00) against Defendant 1st Guaranty, as equitable monetary relief in favor of the Commission, jointly and severally with the monetary judgment that was entered against Defendants Stephen Lalonde and Michael Petroski;

9

C.     Judgment is entered in the amount of Five Hundred Eighteen Thousand Nine Hundred Three dollars ($518,903.00) against Defendant Crossland, as equitable monetary relief in favor of the Commission, jointly and severally with any monetary judgment that was entered against Defendants Stephen Lalonde and Michael Petroski;

D.     Judgment is entered in the amount of One Hundred Sixteen Thousand Ten dollars ($116,010.00) against Defendant Scoreleaper, as equitable monetary relief in favor of the Commission, jointly and severally with any monetary judgment that was entered against Defendants Stephen Lalonde and Michael Petroski;

E.     The judgment amounts set forth in Subsection A-D of this Section, less the sum of payments made pursuant to this Section and by any defendant with whom Default Defendants are jointly and severally liable, shall become immediately due and payable by Default Defendants, and interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance;

F.     All funds paid shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including, but not limited to, restitution and any attendant expenses for the administration of such equitable relief, provided, however, that any person or entity having a perfected judgment lien against any funds collected toward payment of the monetary judgment in this Order shall not be precluded from asserting its rights to such funds as permitted by law.  If the Commission determines, in its sole discretion, that direct redress of

10

consumer injury is wholly or partially impracticable, or funds remain after the restitution is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Default Defendants shall have no right to challenge the Commission's choice of remedies under this Section. This Judgment for equitable monetary relief is solely remedial in nature and is not a fine, penalty, punitive assessment, or forfeiture;

G.      Default Defendants shall cooperate fully with the Commission and its agents in all attempts to collect the amounts due pursuant to this Section, including, upon request, providing the Commission with their federal and state tax returns for the preceding two (2) years, and completing new financial disclosure forms fully and accurately within ten (10) business days of receiving a request from the Commission to do so. Default Defendants further authorize the Commission to verify all information provided on their financial disclosure forms with all appropriate third parties including, but not limited to, financial institutions;

H.      Upon request, Default Defendants are hereby required, in accordance with 31 U.S. § 7701, to furnish to the FTC their tax identification numbers, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order; and

I.       Pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §

1681b(1), any consumer reporting agency may furnish a consumer report

concerning Default Defendants to the FTC, which shall be used for purposes of

collecting and reporting on any delinquent amount arising out of this Order.

## V.

## LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze of the assets of Default Defendants,

pursuant to Section IV of the Stipulated Preliminary Injunction entered on December 2, 2009,

shall be lifted for the sole purpose of effectuating the transfer of assets in partial satisfaction of

the monetary judgment as provided in Section IV of this Order, and shall be of no further force or

effect.

## VI.

## WINDING UP THE RECEIVERSHIP

**IT IS FURTHER ORDERED** that, to the extent they are not inconsistent with this

Order, all powers granted to the Receiver pursuant to the Court's Preliminary Injunction Order of

December 2, 2009, shall remain in full force and effect.  The Receiver shall liquidate all assets of

the Default Defendants, and their subsidiaries, and affiliated entities, and wind up all activities

and operations of the Receivership.  The Receiver shall maintain the records of the Default

Defendants until the trial of the remaining Defendant, Amy Lalonde, is concluded, the expiration

of any party's appeal and this case is concluded.  The Receiver shall not dispose of, or arrange for

the disposal of, the records of Default Defendants, including, but not limited to, Default

Defendants' customer information until further order of this Court.  The Receiver shall not

liquidate or abandon any computer equipment in possession of the Receivership without first removing all customer information on the computer equipment, consistent with Section X of this Order.

## VII.

## COMPENSATION OF THE RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and those it employs are entitled to reasonable compensation for the performance of their duties pursuant to this Order and for the costs of actual out-of-pocket expenses incurred by them, from the Default Defendants' assets held by or in the possession or control of, or which may be received by, the Receiver or the Default Defendants.  The Receiver may pay its non-member employees and independent contractors on an ongoing basis.

## VIII.

## TERMINATION OF RECEIVERSHIP

**IT IS FURTHER ORDERED** that the Receiver shall, if it has not already done so, file its final application for fees with respect to the Default Defendants within 180 days of the execution of this Order, unless good cause is shown to extend the receivership beyond 180 days. The Receiver's final application for fees for the Default Defendants shall be served upon the parties through counsel.  Plaintiff may object within 15 days of receipt, but Default Defendants shall have no right to object.  Upon submission of the Receiver's final application or upon entry of this Judgment, whichever is later, and subject to the terms set forth in Section VI herein, the receivership shall terminate.

## IX.

## COOPERATION WITH RECEIVER

**IT IS FURTHER ORDERED** that Default Defendants shall cooperate fully with the
Receiver in:  (A) pursuing any and all claims by the Receiver against other persons or entities;
(B) assisting the Receiver in defending any and all actions or claims brought against the
Receiver, the Receivership Estate or the Default Defendants by other persons or entities; (C)
executing any documents necessary to transfer assets or ownership interests to the Receiver
pursuant to the terms of this Order; and (D) refraining from any act that would interfere or
impede the Receiver in execution of the performance of its duties.

## X.

## PROHIBITION ON RELEASE OF CUSTOMER INFORMATION
## OR CUSTOMER LISTS

**IT IS FURTHER ORDERED** that Default Defendants, and their officers, agents,
servants, employees, and all other persons in active concert or participation with any of them
who receive actual notice of this Order by personal service or otherwise, are permanently
restrained and enjoined from:

    A.    disclosing, using, or benefitting from customer information, including the name,
address, telephone number, email address, social security number, other
identifying information, or any data that enables access to a customer's account
(including a credit card, bank account, or other financial account), of any person
which any Defendant obtained prior to entry of this Order in connection with any
mortgage, credit repair service, credit-related product, program, or service, or
mortgage loan modification or foreclosure relief service; and

14

*Provided further*, *however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## XI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A. Within ten (10) days of receipt of written notice from a representative of the Commission, Default Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in each Defendant's possession or direct or indirect control to inspect the business operation;

B. In addition, the Commission is authorized to use all other lawful means, including, but not limited to:

 1. obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45, and 69;

 2. having its representatives pose as consumers and suppliers to Default Defendants, their employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; and

15

C.     Default Defendants each shall permit representatives of the Commission to

interview any employer, consultant, independent contractor, representative, agent,

or employee who has agreed to such an interview, relating in any way to any

conduct subject to this Order.  The person interviewed may have counsel present.

*Provided however*, that nothing in this Order shall limit the Commission's lawful use of

compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49 and 57b-1,

to obtain any documentary material, tangible things, testimony, or information relevant to unfair

or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C.

§ 45(a)(1)).

## XII.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this

Order may be monitored:

A.     For a period of five (5) years from the date of entry of this Order, Default

Defendants shall notify the Commission of any changes in structure of any

Defendant or any business entity that any Defendant directly or indirectly controls,

or has an ownership interest in, that may affect compliance obligations arising

under this Order, including, but not limited to:  incorporation or other

organization; a dissolution, assignment, sale, merger, or other action; the creation

or dissolution of a subsidiary, parent, or affiliate that engages in any acts or

practices subject to this Order; or a change in the business name or address, at

least thirty (30) days prior to such change, *provided* that, with respect to any such

16

change in the business entity about which a Defendant learns less than thirty (30) days prior to the date such action is to take place, Default Defendants shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.   One hundred eighty (180) days after the date of entry of this Order and annually thereafter for a period of five (5) years, Default Defendants each shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to:

1.   A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;" and

2.   Any other changes required to be reported under Subsection A of this Section.

C.   Each Defendant shall notify the Commission of the filing of a bankruptcy petition by such Defendant within fifteen (15) days of filing.

D.   For the purposes of this Order, Default Defendants shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier (not the U.S. Postal Service) all reports and notifications to the Commission that are required by this Order to:

Associate Director for Enforcement
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
RE:  *FTC v. 1*$^{st}$ *Guaranty, et al. (X010012*)

17

*Provided* that, in lieu of overnight courier, Default Defendants may send such reports or notifications by first-class mail, but only if Default Defendants contemporaneously send an electronic version of such report or notification to the Commission at DEBrief@ftc.gov.

E.     For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with each Defendant.

## XIII.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, Default Defendants are hereby restrained and enjoined from failing to create and retain the following records:

A.     Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.     Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.     Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

18

D.   Complaints and refund requests (whether received directly or indirectly, such as through a third party,) and any responses to those complaints or requests;

E.   Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.   All records and documents necessary to demonstrate full compliance with each provision of this Order, including, but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## XIV.

## DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Default Defendants shall deliver copies of the Order as directed below:

A.   Each Default Defendant must deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting."  For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set

forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

B.    Default Defendants must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## XV.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that each Default Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

20

## XVI.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED**, this <u>6th</u> day of July, 2011.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All Counsel of Record
Copies provided by Chambers to:

Amy Lalonde
2090 NE 65th Street
Fort Lauderdale, FL 33308

Stephen Lalonde
Reg. No. #91119-004
Adams County Correctional Center
P.O. Box 1600
Washington, MS 30190

Michael Petroski
5161 NE 18th Ave
Fort Lauderdale, FL 33334

Rhett Traband, P.A.
Michael A. Shafir, Esq.
Broad and Cassell
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, FL 33131
Attorneys for Receiver Mark Raymond

Mark Raymond is Receiver for Defendants:  1st Guaranty Mortgage Corporation
                                           Spectrum Title, Inc.
                                           Crossland Credit Consulting Corp.
                                           Scoreleaper, LLC